IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


CHAD WILLIAM LENSING                                                    PLAINTIFF


        v.                              CIVIL NO. 12-2224


CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                         DEFENDANT


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

        Plaintiff, Chad William Lensing, brings this action pursuant to 42 U.S.C. § 405(g),

seeking judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act).  In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision.  See

42 U.S.C. § 405(g).

## I.      Procedural Background:

        Plaintiff protectively filed his current applications for DIB and SSI on March 18, 2010,

alleging an inability to work since January 15, 2010, due to dyslexia, a learning disorder, and

attention deficit hyperactivity disorder (ADHD).  (Tr. 148, 155, 184).  An administrative hearing

was held on October 19, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 27-80).

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as
Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

By written decision dated April 26, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 15). Specifically, the ALJ found Plaintiff had the following severe impairments: a mood disorder and ADHD. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 15). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant is able to perform work where interpersonal contact is incidental to work performed, complexity of tasks is learned and performed by rote, with few variables, requiring little judgment, and supervision required is simple, direct, and concrete.

(Tr. 17). With the help of a vocational expert, the ALJ determined Plaintiff could perform his past relevant work as a lumber loader. (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on August 3, 2012. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 13,14).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

## II.   Evidence Presented:

At the time of the administrative hearing before the ALJ on October 19, 2010, Plaintiff, who was twenty-two years of age, testified that he had a high school education. (Tr. 30).

AO72A
(Rev. 8/82)

Plaintiff testified that he also attended vocational rehabilitation for a short period of time after he graduated from highschool. (Tr. 31).

The medical evidence for the relevant time period reflects the following. Treatment notes from Perspective Behavioral Health and Management dated February 10, 2010, report Plaintiff was in for a medication follow-up appointment. (Tr. 363-364, 448). Plaintiff reported that he had gone through a slump, but that now he was back and better. Plaintiff denied depression but noted that every once in a while he got depressed but that it was not as bad as it used to be. Plaintiff reported that he owed his parents money, that he had been mean to a girl, that he needed to get a lot of things straight in his mind, and that he was starting a new music career. Dr. Brent Witherington noted that Plaintiff was having an adequate response to medication.

On February 15, 2010, Plaintiff was seen by Dr. James Cheshier for a checkup. (Tr. 359). Dr. Cheshier noted Plaintiff was seeing Dr. Witherington at Perspectives, and that Plaintiff was now taking Cymbalta and Tenex. Dr. Cheshier noted Plaintiff was trying to launch a music business. Dr. Cheshier noted that it seemed Plaintiff was having a lot of trouble with focusing issues. Plaintiff was to continue with his current care and to follow-up as needed.

On March 8, 2010, Plaintiff's treatment plan at Perspective Behavioral Health and Management was updated. (Tr. 369-380). The progress report indicated that Plaintiff continued to have anxiety over making an emotional investment in anyone or in any activity. Plaintiff reported that he was more willing to pursue his music and that he could now perform in front of others. Plaintiff was to continue working on goals.

On April 14, 2010, Plaintiff was seen at Perspective Behavioral Health and Management for a psychiatric assessment. (Tr. 406-416). Plaintiff reported that he was being seen to get his

-3-

prescriptions, and to talk to Dr. Witherington about how things were going.  Plaintiff reported that overall he was doing a lot better.  Plaintiff reported that he was dealing with people better. Plaintiff's mother reported that Plaintiff seemed depressed about not having a job or any money. Plaintiff's mother reported that Plaintiff sometimes slept half of the day and when asked to do yard work Plaintiff would get frustrated if he messed it up.  Plaintiff reported that he was sometimes depressed but was not depressed at the time of the appointment.  Plaintiff reported that he slept all day and was up all night which worked out pretty well.  Plaintiff reported having concentration issues.  Plaintiff denied worrying excessively but reported that he does worry a lot. Plaintiff reported that he did not miss working because when he was working he was talked down to by the managers.  Plaintiff's mother reported that she and her husband wished Plaintiff was a little more active and productive.  Plaintiff's mother reported that she was concerned because cartoons were Plaintiff's life.  However, overall Plaintiff's mother reported that she thought Plaintiff was calmer and happier.   Dr. Witherington opined that Plaintiff had a normal mood, affect, flow of speech, thought process, and thought patterns. Dr. Witherington noted that Plaintiff maintained good eye contact, but that he interrupted and was argumentative.  Plaintiff was diagnosed with a generalized anxiety disorder, major depressive disorder, recurrent, moderate, and ADHD, combined type. Dr. Witherington completed a Certification of Adult with a Serious Mental Illness form.  (Tr. 405).  Dr. Witherington opined that Plaintiff met the criteria for an adult with a serious mental illness.

On April 23, 2010, Dr. Christal Janssen completed a mental RFC assessment stating that Plaintiff has moderate limitations in the following areas: in his ability to carry out detailed instructions; in his ability to maintain attention and concentration for extended periods; in his

-4-

ability to sustain an ordinary routine without special supervision; in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; in his ability to accept instructions and respond appropriately to criticism from supervisors; in his ability to respond appropriately to changes in the work setting; and in his ability to set realistic goals or make plans independently of others. (Tr. 340-343).   Dr.  Janssen also completed a Psychological Review Technique Form (PRTF), indicating that Plaintiff had mild restrictions of his activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration persistence or pace; and no episodes of decompensation, each of extended duration. (Tr. 344-357).  Dr. Janssen opined that Plaintiff was "able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgement; supervision required is simple, direct and concrete (unskilled)." (Tr. 342).  On June 15, 2010, after reviewing the record, including allegations of a worsening of Plaintiff's depression, Dr. Jon Etienne Mourot, affirmed Dr. Janssen's April of 2010 opinion.  (Tr. 451).

On June 2, 2010, Mr. Craig Cox, LPC, completed a mental residual functional capacity questionnaire. (Tr. 456-460).  Mr. Cox opined that Plaintiff would be seriously limited or unable to meet competitive standards in most areas of functioning.

On July 20, 2010, Plaintiff was seen at Perspective Behavioral Health and Management for a medication management visit.  (Tr. 469).  Plaintiff reported that he did not really want to attend day treatment. Dr. Max Baker noted that Mr. Cox, Plaintiff's therapist, referred Plaintiff because of Plaintiff's increased depression and suicidal thoughts.  Dr. Baker noted that Plaintiff

AO72A
(Rev. 8/82)

reported "[t]hose have all gone away and I don't feel like things are really as bad as they seemed." Dr. Baker noted that Plaintiff denied feeling depressed. Plaintiff reported that he felt totally fine but that some people in therapy agitated him. Plaintiff reported that one young female was invading his "privacy bubble" by getting too close. Plaintiff did not want to try a new medication for his ADHD.

On August 3, 2010, Plaintiff was seen at Perspective Behavioral Health and Management for a medication management visit. (Tr. 467). Plaintiff reported he was ready to go back to the clinic. Dr. Baker noted Plaintiff's request to return to the clinic was discussed during the last staffing. Dr. Baker noted that all of the staff were in agreement and Plaintiff had a final session to tie up loose ends. Plaintiff was discharged and it was noted that Plaintiff would schedule an appointment with Mr. Cox at the clinic. A new treatment plan was completed on August 9, 2010. (Tr. 470-482).

On August 14, 2010, Plaintiff was seen at River Valley Urgent Care with complaints of a fever, nausea, and a sore throat. (Tr. 485-486). Plaintiff's memory, insight and judgment all appeared normal to Dr. Chansamorn Nouansavane. Plaintiff was diagnosed with gastroenteritis.

On September 2, 2010, Plaintiff was seen at Perspective Behavioral Health and Management for a medication management visit. (Tr. 466-). Plaintiff reported he was "pretty good." Dr. Baker noted that Plaintiff expressed frustration with an attorney that he hired to help him receive disability. Plaintiff's mental status was noted as normal.

**III.    Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or

-7-

mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal

an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national

economy given his age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only

if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work

experience in light of his residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138,

1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV.**     **Discussion:**

Plaintiff argues the following issues in this appeal: 1) the ALJ erred in determining

Plaintiff's severe impairments; 2) the ALJ failed to develop the record as to Plaintiff's RFC; and

3) the ALJ erred in determining Plaintiff's credibility.

**A.**     **Plaintiff's Impairments:**

At Step Two of the sequential analysis, the ALJ is required to determine whether a

claimant's impairments are severe.  See 20 C .F.R. § 404.1520(c).  To be severe, an impairment

only needs to have more than a minimal impact on a claimant's ability to perform work-related

activities.  See Social Security Ruling 96-3p. The Step Two requirement is only a threshold test

so the claimant's burden is minimal and does not require a showing that the impairment is

disabling in nature.  See Brown v. Yuckert, 482 U.S. 137, 153-54 (1987).   The claimant,

however, has the burden of proof of showing he suffers from a medically-severe impairment at

Step Two.   See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

Plaintiff argues that the ALJ improperly failed to specifically include Plaintiff's alleged

depression and anxiety as severe impairments. While the ALJ did not separately specify

-8-

Plaintiff's depression and anxiety as severe impairments, the ALJ specifically discussed these alleged impairments, and clearly stated that he considered all of Plaintiff's impairments.  See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir.2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").   Thus, the ALJ's not separately specifying Plaintiff's depression and anxiety as severe impairments does not constitute reversible error.

### B.     The ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that

AO72A
(Rev. 8/82)

addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

"The [social security] regulations provide that a treating physician's opinion ... will be granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record.'"  Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir.2000) (citations omitted).  An ALJ may discount such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions.  Id. at 1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small, the ALJ must give good reasons for that weighting.  Id. (citing 20 C.F.R. § 404.1527(d)(2)).

The Court finds, based upon the well-stated reasons outlined in the Defendant's brief, that Plaintiff's argument is without merit, and there was sufficient evidence for the ALJ to make an informed decision.  The Court notes that in determining Plaintiff's RFC, the ALJ specifically discussed the relevant medical records.  The ALJ also discussed the medical opinions of examining and non-examining medical professionals, as well as an "other source" medical opinion completed by Mr. Cox, and set forth the reasons for the weight given to the opinions.  Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record

-10-

as a whole).  Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

### C.  Subjective Complaints and Credibility Analysis:

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, and the Defendant's well-stated reasons set forth in her brief, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors.  As pointed out by the ALJ, the record revealed that Plaintiff reported that his sleep, appetite and energy were normal in August of 2010. (Tr. 467). In September of 2010, Plaintiff reported he was feeling "pretty good," that his sleep was fairly good, that his appetite was normal, and that his anxiety level was good.  (Tr. 466).  The record further revealed that Plaintiff was able to perform normal household chores, that he spent time playing his guitar, writing music, and watching television.  Based on the record as a whole, the Court finds there is substantial evidence to support the ALJ's credibility findings.

-11-

**D.      Fully and Fairly Develop the Record:**

While an ALJ is required to develop the record fully and fairly, see Freeman v. Apfel,

208 F.3d 687, 692 (8th Cir.2000) (ALJ must order consultative examination only when it is

necessary for an informed decision), the record before the ALJ contained the evidence required

to make a full and informed decision regarding Plaintiff's capabilities during the relevant time

period.  See Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop

record fully and fairly to ensure it includes evidence from treating physician, or at least

examining physician, addressing impairments at issue).

**E.      Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of

record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth

the impairments which the ALJ accepted as true and which were supported by the record as a

whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the

vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that

Plaintiff's impairments did not preclude him from performing his past relevant work as a lumber

loader during the relevant time period.   Pickney v. Chater, 96 F.3d 294, 296 (8th Cir.

1996)(testimony from vocational expert based on properly phrased hypothetical question

constitutes substantial evidence).

**IV.    Conclusion:**

Based on the foregoing, the Court recommends affirming the ALJ's decision, and

dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our**

**report and recommendation in which to file written objections pursuant to 28 U.S.C. §**

-12-

**636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of October, 2013.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-13-